# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00539-CR

**International Fidelity Insurance Company, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-GV-08-002087, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

International Fidelity Insurance Company ("International Fidelity") appeals the trial court's judgment awarding $30,000 plus court costs to the State of Texas in a bond-forfeiture suit against Armando Gomez, as principal, and International Fidelity, as surety. The State filed suit within the four-year statute of limitations, but failed to properly serve International Fidelity until three-and-one-half months after the limitations period had expired. The trial court found that the State was diligent in its efforts to serve International Fidelity and entered a judgment in favor of the State. International Fidelity claims that the statute of limitations barred the action because the State failed to exercise due diligence in effecting service. Because we conclude that there was sufficient evidence to support a finding of due diligence, we will affirm the trial court's judgment.

**BACKGROUND**

Gomez was arrested for sexual assault and his bail was set for $30,000. Roel Zamora, then an agent of International Fidelity, posted a bond for Gomez. When Gomez failed to appear for trial on September 30, 2004, a judgment for $30,000 plus court costs was rendered against him.[1] The State took no immediate action to secure payment of the judgment.

Several years later, International Fidelity requested the return of the $50,000 security it had provided to the Travis County Bail Bond Board. The security was a condition for International Fidelity's license to make bail bonds through Zamora, who, as of 2004, no longer had the authority to act on behalf of International Fidelity. To determine whether a return of the security was appropriate, Sharon Talley, the Assistant Travis County Attorney representing the Bail Bond Board, conducted research into International Fidelity's outstanding bond-forfeiture liability. Talley discovered five pending bond-forfeiture suits and one bond forfeiture, Gomez's, on which suit had not yet been filed. On September 9, 2008, Talley obtained an amended judgment nisi against International Fidelity, and filed suit against Gomez and International Fidelity. Also on September 9, Talley requested that the district clerk's office issue citations to be served on the defendants. She testified at trial that she did not believe she told the clerk whom to serve as International Fidelity's agent, but that she had filed an updated "guideline sheet" with the clerk's office that same day, listing various sureties' agents for service of process, including Roger Moore, International Fidelity's attorney, as agent for International Fidelity.[2] On September 10, 2008, Talley sent an email to Moore

---

[1] This original judgment nisi was later amended to name International Fidelity as surety.

[2] Moore became International Fidelity's registered agent in 2004 and remained its agent throughout the time period relevant to this appeal.

2

with an attached spreadsheet identifying the six outstanding bond-forfeiture suits found by Talley, including the cause number for the suit she had filed the day before against Gomez and International Fidelity, stating, "Call me if you have any questions."

A citation naming Zamora as the recipient of service on behalf of International Fidelity was delivered on October 13, 2008 to Irene Cavazos, a third party who has never been employed by International Fidelity, at an address unoccupied by International Fidelity since 2004. Talley testified that the mistake in putting Zamora's name on the citation was "not by [her] office," suggesting that she believed it to be a mistake by the clerk's office. Talley further testified that the Travis County Attorney's Office was not given a copy of the officer's return, as it is not customary for the constable to send a copy of the return of service to them. Instead, Talley relied on FACTS, a case information database kept by the clerk's office, to confirm that proper service had been completed. On October 13, 2008, the FACTS file reflected an executed service of citation on International Fidelity, but did not indicate to whom the citation was addressed. No further effort was made by the State to serve Moore until Talley asked Tim Labadie, also an Assistant Travis County Attorney, to look into the six outstanding International Fidelity cases. Labadie testified that he saw the notation of citation in FACTS, but was concerned because he had not yet received an answer from Moore, whom he had worked with in the past and who typically answered promptly. Because of this concern, Labadie looked at the officer's return and discovered that Moore had not been served as International Fidelity's agent. Upon discovering the failed service on January 14, 2009, Labadie promptly prepared a new citation and asked the clerk's office to complete service on Moore. A

citation was prepared and delivered to the constable on January 15, and Moore was successfully served as International Fidelity's agent on January 27.

At trial, International Fidelity took the position that the State's bond-forfeiture suit was barred by the applicable statute of limitations. The trial court determined that the statute of limitations was not a bar to the State's action because the State exercised due diligence in serving International Fidelity. It awarded the State $30,000 plus court costs. International Fidelity appeals, challenging the trial court's determination that the State acted with due diligence.

## STANDARD OF REVIEW

Whether a plaintiff acted with due diligence is generally a question of fact. *Eichel v. Ullah*, 831 S.W.2d 42, 43 (Tex. App.—El Paso 1992, no writ). The question of due diligence may be answered as a matter of law only when a delay in service is "unexplained or patently unreasonable." *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007) (per curiam). Whether diligence is lacking as a matter of law is a conclusion of law to be reviewed de novo. *See, e.g.*, *Ashley v. Hawkins*, 293 S.W.3d 175, 180-81 (Tex. 2009). We will uphold the trial court's conclusion of law if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg. N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

In a bench trial where, as in this case, no findings of fact or conclusions of law are filed or requested, we will infer that the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Because a reporter's record was filed, these implied findings may be challenged for evidentiary sufficiency. *Id.* at 84. The standards of review are the same as those applied to jury findings and a court's express findings

4

of fact. *Wade v. Commission for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.—Houston [1st Dist.] 1997, no writ). When the implied findings of fact are supported by the evidence, we must affirm the judgment on any theory of law applicable to the case. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984).

We review the trial court's factual finding for legal and factual sufficiency of the evidence. While bond-forfeiture proceedings are criminal cases in which the Texas Court of Criminal Appeals has final state-court jurisdiction, *see Safety Nat'l Cas. Corp. v. State*, 305 S.W.3d 586, 588 (Tex. Crim. App. 2010), appellate review of bond forfeitures is controlled by the same rules that govern the review of civil actions. *See* Tex. Code Crim. Proc. Ann. art. 44.44 (West 2006). For this reason, we apply civil case law regarding International Fidelity's legal and factual sufficiency challenge.[3]

In conducting a legal-sufficiency review, a court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable fair-minded people to reach the finding under review. *Id.* at 827. In reviewing factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We do not engage in our

---

[3] We recognize the court of criminal appeals' recent opinion in *Brooks v. State*, __ S.W.3d __, No. PD 0210-09, 2010 Tex. Crim. App. LEXIS 1240 (Tex. Crim. App. October 6, 2010), which merged the factual and legal sufficiency standards in its review of a criminal conviction. *Id*. at *57. However, because bond-forfeiture cases are regulated by the rules that govern civil actions, the new criminal standard of review outlined in *Brooks* is not applicable to the facts of this case.

own factual review. Rather, the trial judge is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). We may not substitute our judgment for that of the trial court. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

## DISCUSSION

International Fidelity argues that the State's action is barred by the statute of limitations for bond forfeiture actions. *See* Tex. Code Crim. Proc. Ann. art. 22.18 (West Supp. 2009). It claims that, because the State offered no explanation for the delay in serving International Fidelity, diligence is lacking as a matter of law, and the statute of limitations acts as a complete defense.

Article 22.18 of the Texas Code of Criminal Procedure creates a four-year statute of limitations on bond forfeiture actions by the State, requiring a suit to be brought on or before the fourth anniversary of the date that the principal fails to appear in court. *See id*. Gomez's failure to appear occurred on September 30, 2004; therefore the State had until September 30, 2008 to file an action to forfeit the bail bond. It is undisputed that Talley initiated the suit within the limitations period, but that Moore was not properly served as International Fidelity's agent until January 14, 2009, approximately three-and-one-half months after limitations had expired. When a plaintiff files suit within the statute of limitations, but does not serve the defendant until after the statute of limitations has run, the date of service relates back to the date of filing if the plaintiff exercised due diligence in effecting service. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam) (citing *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 890 (Tex. 1975) (per curiam)). If

6

due diligence was not exercised, the lawsuit is deemed filed on the date of service. *Id.* The questions before this Court are twofold: whether the trial court erred by not concluding that diligence was lacking as a matter of law, and whether the evidence is legally and factually sufficient to support the trial court's finding that the State exercised diligence in obtaining service upon International Fidelity.

### *Diligence as a Matter of Law*

Although the question of diligence is generally a fact question, a plaintiff may demonstrate a lack of diligence as a matter of law, "when one or more lapses between service efforts are unexplained or patently unreasonable." *Proulx*, 235 S.W.3d at 216. Lack of diligence may be found even in the face of an offered explanation, if that explanation affirmatively establishes lack of reasonable diligence. *Id*. When a defendant has affirmatively pleaded the defense of limitations and shown that service was not timely, as International Fidelity has done here, the burden shifts to the plaintiff to prove diligence. *Id.* (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex. 1990)). If the plaintiff's explanation for the delay raises a material fact issue concerning the diligence of service efforts, the burden shifts back to the defendant to conclusively show why, as a matter of law, the explanation is insufficient. *Id.*

The State's explanation for the delay consisted of the following: the State attempted to promptly serve International Fidelity, the error in service was not the State's error, the clerk's office affirmatively represented that service had been successfully completed through its notation of service in the FACTS system, and immediately upon learning of the error, the State effected service on Moore as International Fidelity's agent. International Fidelity argues that this explanation

7

by the State was not an explanation at all, and that diligence is lacking as a matter of law because the three-month delay was an unexplained lapse of diligence. International Fidelity, however, conflates lack of explanation with inactivity, arguing that because the State did not take any actions for months, and because it did not explain how the miscommunication with the clerk's office occurred, it was not diligent. Though there were several months of inactivity, the State did provide an explanation: it relied on the FACTS system's notation that service had been effected, unaware that a mistake by the clerk's office made service unsuccessful.

The cases cited by International Fidelity as examples of lack of diligence as a matter of law differ from the current facts, as they involve situations in which the plaintiffs provided no explanation at all for one or more periods of inactivity. *See Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex. 1970) (holding lack of diligence existed as matter of law when respondents waited seventeen months after learning of improper service to correct it); *Perkins v. Groff*, 936 S.W.2d 661, 668 (Tex. App.—Dallas 1996, writ denied) (upholding summary judgment because there was "no explanation for the delay" in service); *Liles v. Phillips*, 677 S.W.2d 802, 809 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (holding lack of diligence existed as matter of law when appellee "offered no explanation whatsoever concerning the delay between filing suit and service of citation"); *Allen v. Bentley Labs, Inc.*, 538 S.W.2d 857, 860 (Tex. Civ. App.—San Antonio 1976, writ ref'd n.r.e.) (upholding summary judgment finding lack of diligence as matter of law when appellant "did not plead or offer any excuse for the delay of almost six months in serving [appellee]"); *Williams v. Houston-Citizens Bank & Trust Co.*, 531 S.W.2d 434, 436 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.) (upholding judgment finding lack of diligence

as matter of law when appellee "offered no explanation of the delay between issuance of the first and second citations"); *Buie v. Couch*, 126 S.W.2d 565, 567 (Tex. Civ. App.—Waco 1939, writ ref'd) (holding, when appellee failed to ascertain whether the clerk had prepared citation, that "[s]uch conduct on his part, without any excuse therefore, is wholly inconsistent with due diligence and constitutes negligence as a matter of law").

Furthermore, case law supports the existence of a fact question when a plaintiff attempts timely service, but miscommunications or mistakes by the district clerk's office unknown to the plaintiff result in service being unsuccessful. *See Hodge v. Smith*, 856 S.W.2d 212, 217 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Valdez v. Charles Orsinger Buick Co.*, 715 S.W.2d 126, 128 (Tex. App.—Texarkana 1986, no writ).

In *Hodge*, the district clerk provided a postcard notice to plaintiff that the defendant had been served via publication, even though the plaintiff's inadvertent failure to sign the supporting affidavit rendered service ineffective. 856 S.W.2d at 217. Relying on the postcard, counsel for the plaintiff delayed in obtaining personal service for several months. *Id.* The *Hodge* court reversed the trial court's grant of summary judgment based on limitations. *Id.* The court found that the attorney's explanation for the delay created a fact issue concerning diligence because "a jury could reasonably conclude that the unintentional, inadvertent failure to sign the affidavit . . . and the failure to discover the mistake[] were within the realm of what an ordinary, prudent person might do under the same circumstances." *Id.*

In *Valdez*, a miscommunication between the law firm's secretary and the clerk's office regarding the fee required to serve both defendants resulted in only one defendant being

9

timely served. 715 S.W.2d at 127. The *Valdez* court held that the offered explanation, miscommunication, was sufficient to raise a fact issue as to whether the plaintiff exercised reasonable diligence. *Id.* at 128.[4]

Here, as in *Hodge* and *Valdez*, the State made an unsuccessful attempt to effect timely service that, due to a miscommunication with the clerk's office, was not discovered until after the limitations period had ended. Because International Fidelity provided an explanation for the delay in effecting service that was not patently unreasonable, we conclude that the trial court did not err in resolving the issue of due diligence as a question of fact.

### *Diligence as a Fact Question*

Having determined that diligence is not lacking as a matter of law, we now review the trial court's due-diligence finding for sufficiency of the evidence. Due diligence requires that the plaintiff exercise "that diligence to procure service which an ordinarily prudent person would have used under the same or similar circumstances." *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 590 (Tex. App.—Corpus Christi 1994, no writ). It also requires that the plaintiff diligently pursue service on the defendant. *Hodge*, 856 S.W.2d at 215. Testimony from trial indicates that the State did in fact make efforts to serve Moore. Though the initial citation was defective, the State did not discover this fact until January 2009 because it never received a copy of

---

[4] The court in *Rodriguez v. Tinsman & Houser, Inc.* described *Hodge* and *Valdez* as cases involving "miscalculated attempts to effect service that, due to miscommunication or inadvertence, were not discovered until after the expiration of the limitations period," distinguishing them from cases in which service was not attempted until after the limitations period had run. 13 S.W.3d 47, 51 (Tex. App.—San Antonio 1999, no pet.).

10

the officer's return, and the FACTS system, which the County Attorney's office relied on, indicated that service had been completed. Upon discovering the defect, the State immediately obtained proper service. Given these facts and the applicable ordinarily-prudent-person standard, we cannot conclude that the trial court's finding of due diligence is unsupported by the evidence or so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust.

Because the evidence is sufficient to support the trial court's finding that the State acted with due diligence in attempting to serve International Fidelity, we affirm the trial court's judgment.

## CONCLUSION

We affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Pemberton and Henson

Affirmed

Filed: November 3, 2010

Do Not Publish

11